NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2899
_____

UNITED STATES OF AMERICA


v.

JELANI SOLOMON,
Appellant


_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No.05-0385-001)
District Judge: Honorable Terrence F. McVerry

_____

Submitted Under Third Circuit L.A.R. 34.1(a),
July 12, 2010

Before: FUENTES, ALDISERT, and ROTH, Circuit Judges.

(Opinion Filed: July 23, 2010 )

_____

OPINION OF THE COURT

_____


FUENTES, Circuit Judge:

Jelani Solomon appeals from his conviction, challenging the District Court's

-1-

decision to empanel a partially innominate jury, as well as the sufficiency of the evidence.

For the following reasons, we affirm Solomon's conviction.[1]

## I.

Because we write primarily for the parties, we discuss the facts only to the extent necessary for disposition of this appeal.

Solomon was charged in a Nine count Indictment with two co-defendants, Wanda Solomon (his mother) and Claron Hanner (his sister's boyfriend), with various narcotics and firearms offenses. Relevant to this appeal, Count One charged all three defendants with conspiracy to distribute cocaine. Count Six charged Solomon and Hanner with committing murder during and in relation to the drug trafficking crime charged in Count One. The Government sought the death penalty against both defendants. Wanda and Hanner pleaded guilty and were sentenced to 300 months imprisonment and 240 months imprisonment, respectively. Solomon went to trial and was found guilty on all counts, but the jury declined to impose the death penalty and he was instead sentenced to life imprisonment.

Solomon began dealing drugs in 1994 around age fourteen. His mother was a drug dealer who operated out of her home in Beaver County, PA.. In 1999, Shawn Helisek began to purchase cocaine from Solomon. In 2000, Helisek was arrested by Pennsylvania

---

[1] The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231 and we have jurisdiction to hear this appeal under 28 U.S.C. § 1291.

authorities and agreed to help build a case against Solomon. During a controlled delivery, Helisek wore a wire and provided Solomon with ten ounces of cocaine worth $7,000. Helisek testified at the preliminary hearing against Solomon as the State's primary witness. Solomon was released on bond and continued his drug dealing activities while the State charges against him were pending.

While Solomon ultimately decided to plead guilty, he also told his associates that he wanted to ensure that no one would ever "snitch" on him again. He therefore hired Hanner to murder Frank Helisek, Shawn Helisek's father, to send a message. The night before he pleaded guilty, Solomon instructed Hanner which route to take to Frank's house, where to park and where to shoot Frank. Hanner knocked on Frank's door around 10:30 pm and shot him three times through the chest and abdomen. Hanner then met Solomon, who gave him 11 ounces of cocaine and $5,000 for murdering Frank Helisek. The next day, Solomon pleaded guilty and was sentenced to 30 to 72 months incarceration. Shortly thereafter, Hanner was apprehended by law enforcement and ultimately decided to cooperate in their case against Solomon and testified to his role in the murder at Solomon's trial.

Prior to jury selection, the District Court gave the parties notice that it was considering empaneling an anonymous jury pursuant to 18 U.S.C. § 3432, and afforded Solomon an opportunity to file objections. The Court ultimately decided to empanel a partially innominate jury, i.e., the names and personal residences of the jurors were

withheld from the Court and the parties. Jurors did, however, fill out an extensive 85 question questionnaire developed by the Government and by Solomon, and approved by the Court. Included in this questionnaire was an inquiry into the general area of residence of each venireperson. Both parties were also permitted to question the venirepersons individually, and exercise peremptory challenges.

## II.

18 U.S.C. § 3432 provides, in relevant part, that a "person charged with [a] capital offense shall . . . be furnished with a . . . list of the venire[persons] . . . stating the place of abode of each venire[person] . . . except that such list of the venire[persons] . . . need not be furnished if the court finds by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person."[2] (S.A. 3) A district court is not required to hold an evidentiary hearing on juror safety before deciding to empanel an anonymous jury. *See United States v. Eufrasio*, 935 F.2d 553, 574 (3d Cir. 1991). We have suggested outside of the § 3432 context that district courts are also not required to "articulate express findings" when empaneling an anonymous jury, even though doing so would be advisable. *Id*. In the First Amendment context, however, we have held that it is insufficient for a district court to rely on conclusory and generic findings to justify restricting public access

---

[2] While we generally review a district court's decision to empanel an innominate jury for abuse of discretion, because Solomon did not object to the District Court's decision on the First Amendment ground he raises on appeal, or on the sufficiency of the District Court's justifications for its decision, we review this portion of his appeal for plain error. *See United States v. Vosburgh*, 602 F.3d 512, 529 (3d Cir. 2010).

to prospective jurors. *United States v. Wecht*, 537 F.3d 222, 241 (3d Cir. 2008). We have also held that so long as a defendant is permitted a full voir dire, a district court may empanel an anonymous jury "if the court believes there is potential for juror apprehension." *See e.g.*, *Eufrasio*, 935 F.2d at 574.

Here, the District Court explained its reasoning for empaneling a partially innominate jury, noting that it had heard testimony during pretrial proceedings and change of plea hearings:

> That, if believed by the jurors, might well cause [the jury] to be apprehensive – not only for their own safety but, perhaps more acutely, for the safety of their families. It cannot be ignored that Defendant Solomon is charged in Count Six . . . with willfully, deliberately, maliciously, and with premeditation causing the death of an innocent person. . . . [T]he government will be proffering evidence to attempt to prove that Defendant contracted with and paid a co-defendant drugs and money to kill the victim in order to intimidate and/or retaliate against the victim's son who was expected to testify against Defendant in a criminal drug distribution trial the next day. These underlying facts, if believed, could easily result in the potential for juror apprehension.

(S.A. 3.) Thus, the District Court decided that the preponderance of the evidence weighed in favor of empaneling a partially anonymous jury. We agree.

Relying on *Wecht*, Solomon argues, for the first time, that the District Court's reasoning was conclusory and generic and does "not overcome the presumption that juror's names should remain in the public domain." Appellant's Br. at 29. Yet, Solomon's claim that the District Court's reasoning was conclusory and generic is itself conclusory and unpersuasive. Despite Solomon's protestation to the contrary, the District

Court did give a specific reason for its ruling: that the nature of the charges—having a witness's father murdered and the cooperating witness's testimony recounting that murder—supported empaneling a partially anonymous jury.

Furthermore, Solomon's reliance on *Wecht* is misplaced. *Wecht* involved an interlocutory appeal brought by media outlets that objected to juror anonymity based on the First Amendment right to public access to trials. 537 F.3d at 240-41. We reversed the district court, holding that it had failed to articulate "the necessary findings and consideration of alternatives to overcome the presumption that jurors' names should be publicly available." *Id.* at 239. *Wecht* was a First Amendment case that does not mention § 3432. Additionally, unlike in *Wecht*, where there was no indication that the defendant's friends and relatives would be inclined to influence jurors, here, Solomon stood accused of murdering a witness's father. *Cf. United States v. Scarfo*, 850 F.2d 1015, 1017 (3d Cir. 1988) (affirming anonymous empaneling of the jury when the defendant had solicited the murders of a judge and of prospective witnesses).

Finally, the District Court did not empanel an entirely anonymous jury. Rather, it crafted a compromise and withheld from itself and both parties only the prospective jurors names and specific addresses. Indeed, jurors filled out an extensive questionnaire developed by both parties, and indicated their general area of residence in response to one question. Moreover, as noted, both parties were also permitted to question the venirepersons individually, and to exercise peremptory challenges.

Accordingly, Solomon has not shown any error, much less plain error, and therefore, we affirm the District Court's decision to empanel a partially innominate jury.

Next, Solomon challenges the sufficiency of the evidence used to convict him of the cocaine conspiracy. In turn, he also challenges his conviction on Count Six, murder in aid of drug trafficking, since he should have been acquitted of the drug conspiracy.[3] After reviewing the extensive trial transcripts, particularly the cooperating witnesses' testimony, we find the evidence introduced at trial was undoubtedly sufficient to support convictions on Counts One and Six, and we therefore affirm these convictions.[4]

**III.**

For the foregoing reasons, we affirm the judgment of the District Court.

---

[3] We will sustain a jury verdict "if there is substantial evidence, taking the view most favorable to the Government, to support it. If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, then the verdict of the jury must be sustained." *United States v. Voigt*, 89 F.3d 1050, 1080 (3d Cir. 1996) (internal quotation marks & citations omitted).

[4] Solomon conflates his sufficiency of the evidence argument with an allegation of a variance between the conspiracy charged in the Indictment and the evidence introduced at trial. To the extent that Solomon argues a variance between the single conspiracy charged in Count One and the purported multiple conspiracies proved at trial, this claim also fails. Not only was the evidence more than sufficient to prove a single conspiracy, but the jury charge included an instruction on single versus multiple conspiracies, curing any potential defect. *See United States v. Perez*, 280 F.3d 318, 347 (3d Cir. 2002).